

1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11   LARRY LEVINE; TOM KAPTAIN;
     SCOTT HART; and CALIFORNIA
12   REPUBLICAN ASSEMBLY,
                                          NO. CIV. S-02-199 LKK/DAD
13          Plaintiffs,

14      v.                                   O R D E R

15   FAIR POLITICAL PRACTICES             **TO BE PUBLISHED**
     COMMISSION,
16
            Defendant.
17   _____/

18       Plaintiffs seek a preliminary injunction barring

19   enforcement of both Cal. Gov't Code section 84305.6 and

20   subsection (a)(6) of Cal. Gov't Code section 84305.5, as it

21   stood before it was amended by Proposition 208.  They assert

22   that the requirements of these provisions violate their right to

23   free speech protected by the First Amendment to the Constitution

24   of the United States.  I resolve their motion on the pleadings

25   and evidence filed herein and after oral argument.

26   ////

1

# I.

## BACKGROUND

Over a number of years, California, both through its legislative and initiative processes, has imposed various disclosure requirements on so-called slate mailers.[1]  Prior to the passage of Proposition 208 in 1996, slate mail organizations were required to print the following disclosure in at least 8-point roman boldface type on each slate mailer:

> NOTICE TO VOTERS
> THIS DOCUMENT WAS PREPARED BY (name of slate mail organization), NOT AN OFFICIAL PARTY ORGANIZATION. Appearance in this mailer does not necessarily imply endorsement of others appearing in this mailer, nor does it imply endorsement of, or opposition to, any issues set forth in this mailer.  Appearance is paid for and authorized by each candidate and ballot measure which is designated by an *.

See Cal. Gov't Code § 84305.5(a)(2)(prior to amendment by Proposition 208).  In addition, Cal. Gov't Code § 84305.5(a)(6), as it stood before Proposition 208,  prohibited sending a slate mailer unless:

> Any candidate endorsement appearing in the slate mailer that differs from the official endorsement of the political party which the mailer appears by representation or indicia to represent is accompanied, immediately below the endorsement, in no less than 9-point roman boldface type which shall be in a color or print that contrasts with the background so as to be easily legible, the following notice: THIS IS NOT THE POSITION OF THE (political party which the mailer appears by representation or indicia to represent)

---

[1]  Generically a slate mailer receives a fee for preparing and mass-mailing to prospective voters brief documents, often 8 ½ x 11" in size, supporting lists of candidates or propositions.  See infra n.2 for the statutory definition, and n.3 for the statutory definition of a slate mailer organization.

1    PARTY.

2  See id.

3    Proposition 208 amended Cal. Gov't Code § 84305.5.  The

4  above provisions were replaced by other slate mail disclosure

5  provisions.  The new provisions were ultimately found to be

6  unconstitutional and their enforcement enjoined by this court.

7  See California Prolife Council v. Scully, 96-1965, March 1, 2001

8  Order.

9    While Proposition 208 was being litigated, Proposition 34

10 was passed.[2]  Cal. Gov't Code § 84305.6, enacted by Proposition

11 34, reads, in pertinent part:

12     In addition to the requirements of Section 84305.5, a
       slate mailer organization . . . may not send a slate
13     mailer unless any recommendation in the slate mailer
       to support or oppose a ballot measure or support a
14     candidate that is different from the official
       recommendation to support or oppose by the political
15     party that the mailer appears by representation or
       indicia to represent is accompanied, immediately below
16     the ballot measure or candidate recommendation in the
       slate mailer, in no less than nine-point roman
17     boldface type in a color or print that contrasts with
       the background so as to be easily legible, the
18     following notice: "THIS IS NOT THE OFFICIAL POSITION
       OF THE (political party that the mailer appears by
19     representation or indicia to represent) PARTY."

20 See id.

21    The plaintiffs in this case have all published slate

22 mailers as defined in Cal. Gov't Code § 82048.3.[3]  As to all but

23 ───────────────

24     [2] Because the passage of Proposition 34 rendered the decision
   on Proposition 208 of limited value, the court elected not to
25 publish it.

26     [3] This section provides that a "'[s]late mailer' means a mass
   mailing which supports or opposes a total of four or more

                              3

1   the California Republican Assembly, it is uncontested that

2   plaintiffs are slate mail organizations as defined by Cal. Gov't

3   Code § 82048.5.[4]  Each of the plaintiffs publish slate mail that

4   targets either Democratic or Republican voters, and their

5   mailers include captions that contain the words "Democrat,"

6   "Democratic," or "Republican," along with other symbols or

7   references typically associated with such parties.[5]  In their

8   slate mail, plaintiffs have included, and represent that they

9   will continue to include, the disclaimer set forth in Cal. Gov't

_____

candidates or ballot measures."

   [4]  This section defines a slate mail organization as:

   [A]ny person who, directly or indirectly, does all of
   the following:
   (1) Is involved in the production of one or more slate
   mailers and exercises control over the selection of the
   candidates and measures to be supported or opposed in
   the slate mailers.
   (2)  Receives  or  is  promised  payments  totaling  five
   hundred dollars ($500) or more in a calendar year for
   the production of one or more slate mailers.

   [5]  Plaintiff Larry Levine, who publishes slate mailers through
his organization known as "Voter Information Guide," printed a
slate mailer in 1996 with the caption, "Voter Information Guide for
Democrats." More recently, for the 2000 primary election, Levine's
slate mailer was titled only "Voter Information Guide," and for
each  candidate,  listed  the  different  endorsing  organizations,
including the Democratic Party.  Plaintiff Scott Hart publishes
slate  mailers  through  an  organization  he  controls  known  as
"Continuing the Republican Revolution."  His slate mailer carries
this title, alongside pictures of former President Ronald Reagan
or President George W. Bush.  Plaintiff Tom Kaptain's slate mail
organization, entitled, "Democratic Voters' Choice," published a
slate mailer for the 2000 primary election that included on the
front of the mailer the words "Vote Democratic" around a donkey
logo,  along  with  the  statement  that,  "The  Democratic  Party  was
Established in 1823."  The inside of the mailers, which contained
the slate listing, had the headline "Our Democratic Team" or "The
Team for Democratic Voters."

4

1  Code § 84305.5(a)(2)(prior to amendment by Proposition 208).[6]

2  They take issue, however, with the requirements of Proposition

3  34, as codified in Cal. Gov't Code § 84305.6, contending that it

4  violates their First Amendment rights.  Similarly, to the extent

5  that defendant intends to enforce Cal. Gov't Code

6  § 84305.5(a)(6) as it stood before Proposition 208, plaintiffs

7  contend that this provision also violates their First Amendment

8  rights.  Plaintiffs ask this court to preliminarily enjoin

9  defendant from enforcing sections 84305.6 and 84305.5(a)(6)

10  against them.

11                                II.

12        **STANDARDS FOR ISSUING A PRELIMINARY INJUNCTION**

13       The purpose of the preliminary injunction as provided by

14  Fed. R. Civ. P. 65 is to preserve the relative positions of the

15  parties -- the <u>status quo</u> -- until a full trial on the merits

16  can be conducted.  <u>See</u> <u>University of Texas v. Camenisch</u>, 451

17  U.S. 390, 395 (1981).  The limited record usually available on

18  such motions renders a final decision on the merits

19  inappropriate.  <u>See</u> <u>Brown v. Chote</u>, 411 U.S. 452, 456 (1973).

20  ////

21  _____

22       [6] Whether, due to the fact that this court found Proposition
    208 unconstitutional, this provision is now again in effect is a
23  matter at issue in this litigation.  If this provision is not again
    in effect the fact that plaintiffs represent that they will
24  continue to conduct their affairs in accordance with its
    requirements clearly would not bind them to do so.  Accordingly,
25  although the court considers that representation relative to this
    motion for a preliminary injunction, it is not clear that the
26  representation would bear any significant weight in considering a
    permanent ban.

1    "The [Supreme] Court has repeatedly held that the basis for
2    injunctive relief in the federal courts has always been
3    irreparable injury and the inadequacy of legal remedies."
4    Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).  In the
5    Ninth Circuit, two interrelated tests exist for determining the
6    propriety of the issuance of a preliminary injunction.  The
7    moving party carries the burden of proof on each element of
8    either test.  See Los Angeles Memorial Coliseum Comm'n v.
9    National Football League, 634 F.2d 1197, 1203 (9th Cir. 1980).
10   Under the first "traditional" test, the court may not issue a
11   preliminary injunction unless each of the following requirements
12   is satisfied:  (1) the moving party has demonstrated a
13   likelihood of success on the merits, (2) the moving party will
14   suffer irreparable injury and has no adequate remedy at law if
15   injunctive relief is not granted, (3) in balancing the equities,
16   the non-moving party will not be harmed more than the moving
17   party is helped by the injunction, and (4) granting the
18   injunction is in the public interest.  See Martin v.
19   International Olympic Committee, 740 F.2d 670, 674-75 (9th Cir.
20   1984).

21   Under the second "alternative" test, the court may not
22   issue a preliminary injunction unless the moving party
23   demonstrates either "probable success on the merits and
24   irreparable injury . . . or . . . sufficiently serious questions
25   going to the merits to make the case a fair ground for
26   litigation and a balance of hardships tipping decidedly in favor

1  of the party requesting relief."  Topanga Press Inc. v. City of
2  Los Angeles, 989 F.2d 1524, 1528 (9th Cir. 1993) (citations
3  omitted).  The Ninth Circuit has explained that the two parts of
4  the alternative test are not separate and unrelated, but are
5  "extremes of a single continuum."  Benda v. Grand Lodge of
6  International Association of Machinists, 584 F.2d 308, 315 (9th
7  Cir. 1978), cert. dismissed, 441 U.S. 937 (1979).  We are taught
8  that the critical element within this alternative test is the
9  relative hardship to the parties.  See id.  "[T]he required
10  degree of irreparable harm increases as the probability of
11  success decreases."  United States v. Nutri-cology Inc., 983
12  F.2d 394, 397 (9th Cir. 1992) (citations and internal quotation
13  marks omitted).  Even if the balance tips sharply in favor of
14  the moving party, however, "it must be shown as an irreducible
15  minimum that there is a fair chance of success on the merits."
16  International Olympic Committee, 740 F.2d at 674-75. (citation
17  omitted).

18                              III.

19                            ANALYSIS

20  A.   JURISDICTION

21       The plaintiffs in this case sue the Fair Political
22  Practices Commission ("FPPC"), an arm of the State of
23  California.  It is established Eleventh Amendment jurisprudence,
24  however, that this court lacks "federal jurisdiction over suits
25  against unconsenting States."  Seminole Tribe of Florida v.
26  Florida, 517 U.S. 44, 54 (1996).  Thus, before this action can

                              7

1  proceed I must be satisfied that the State has consented.

2       To note that defendant has not objected to this court's

3  jurisdiction on the basis of the Eleventh Amendment, while

4  pertinent, is not the end of the matter.  The test for

5  determining whether a state has consented to this court's

6  jurisdiction "is a stringent one."  Mitchell v. Franchise Tax

7  Bd. (In re Mitchell), 208 F.3d 1111, 1117 (9th Cir. 2000).  A

8  state waives its immunity when it "voluntarily invokes [federal]

9  jurisdiction or . . . makes a 'clear declaration' that it

10  intends to submit itself to [federal] jurisdiction."  Shulman v.

11  California (In re Lazar), 237 F.3d 967, 976 (9th Cir. 2001).

12  Such "clear declaration," however, need not be express.  Rather,

13  "a state 'waive[s] its Eleventh Amendment immunity by conduct

14  that is incompatible with an intent to preserve that immunity.'"

15  Indus. Comm'n of Ariz. v. Bliemeister (In re Bliemeister), 296

16  F.3d 858, 861 (9th Cir. 2002) (quoting Hill v. Blind Indus. &

17  Servs., 179 F.3d 754, 758 (9th Cir. 1999)).

18       Here, while the defendant did not explicitly address the

19  question of sovereign immunity, it twice stated that it did not

20  dispute this court's jurisdiction.  First, in its answer to

21  plaintiffs' complaint, defendant stated in pertinent part:

22       The FPPC admits the allegations of Paragraph 1,
         that this Court has jurisdiction pursuant to 28
23       U.S. C §§ 1331, 1343(a)(3), and 1343(a)(4), and
         that this is a civil action brought under 42 U.S.C.
24       § 1983, arising under the First and Fourteenth
         Amendments to the Constitution of the United
25       States.

26  Answer of Defendant Fair Political Practices Commission, filed

1  February 13, 2002, at 2 ¶ 1.  Later, in a status report to this
2  court, the defendant stated, "Defendant does not dispute
3  jurisdiction but may move the Court to abstain or stay these
4  proceedings . . . ."  Defendant's Status Report filed April 19,
5  2002 at 2:18-19.  These representations, alongside the fact that
6  the defendant has actively participated in this litigation, see,
7  e.g. Bliemeister, 296 F.3d at 861, are "incompatible with an
8  intent to preserve immunity."  Id.  Accordingly, I find that
9  defendant has consented to the jurisdiction of this court.

10 **B.   JUSTICIABILITY**

11     "Whether the question is viewed as one of standing or
12 ripeness," before considering the plaintiffs' motion, this court
13 must be assured that the plaintiffs face an actual injury.   See
14 Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138
15 (9th Cir. 2000).  To establish the requisite ripeness and
16 standing for purposes of a preliminary injunction, plaintiffs
17 must demonstrate that they will likely succeed in establishing
18 "a realistic danger of sustaining a direct injury as a result of
19 the statute's operation or enforcement." Id.  See Lujan v.
20 Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("each element
21 [of standing] must be supported in the same way as any other
22 matter on which the plaintiff bears the burden of proof, i.e.,
23 with the manner and degree of evidence required at the
24 successive stages of the litigation").

25     Of course each plaintiff must demonstrate that it has
26 standing to sue.  In this regard, I note that it is uncontested

that the California Republican Assembly is not a slate mail
organization within the meaning of Cal. Gov't Code § 82048.5.
It follows that it is not subject to either of the provisions
that plaintiffs seek to enjoin.  Accordingly, it lacks standing
for purposes of this motion.

As to all the other plaintiffs, it is equally uncontested
that they are slate mail organizations within the meaning of the
provisions at issue.  It further appears that, due to the party
references in plaintiffs' mailers,  plaintiffs are likely to
have these provisions enforced against them.

First, it is clear that, under defendant's interpretation,
the party references in plaintiffs' mailers cause them to
"appear[] by representation or indicia to represent" a given
political party.  Cal. Gov't Code § 84305.5(a)(6)(prior to
amendment by Proposition 208); Cal. Gov't Code § 84305.6.
Although defendant has not issued regulations[7] specifying the
enforcement parameters for these provisions, a FPPC advice
letter to non-party witness Fred Huebscher demonstrates that the
defendant's position is that the mere use of the word
"Democratic" in connection with a political candidate or
proposition makes a mailer "appear[] by representation or

---

[7]     The absence of regulations caused the court to inquire
whether it should defer its decision pursuant to <u>Arizonans for
Official English v. Arizona</u>, 520 U.S. 43 (1997).  The parties agree
that, in the absence of a mechanism under which this court
could certify the issue to the California Supreme Court, such
deference is inappropriate. <u>See California Prolife Council
Political Action Committee v. Scully</u>, 989 F. Supp. 1282, 1288
(E.D. Cal. 1998).

1  indicia to represent" the Democratic Party.[8]  Moreover, while

2  defendant has pointed out that this advice letter is not

3  binding, defendant would be hard-pressed to argue that it does

4  not understand the provisions at issue to reach plaintiffs'

5  mailers.  Many of the slate mailers submitted as exhibits in

6  support of defendant's opposition to plaintiffs' motion were

7  published by the plaintiffs.[9]  See Bowler Decl. and Exhibits;

8  see also Defendant's Opposition to Plaintiffs' Motion for

9  Preliminary Injunction at 3 (likening the plaintiffs' use of

10 "the name 'Democrat' or 'Republican' or other indicia such as

11 the donkey or the elephant" to fraudulent conduct enjoined by a

12 district court in Tomei v. Finley, 512 F. Supp. 695 (N.D. Ill.,

13 1981)).

14      Second, defendant has already taken steps that could lead

15 ─────────────

16 [8]  Fred Huebscher is a publisher of slate mail.  He consulted
   the FPPC in the year 1998 regarding his proposed mailer, in which

17 "the only place 'Democratic' will be printed on the mailer . . .
   is in the disclaimer mandated by section 84305.5 because the name
   of the slate mailer organization is California Democratic

18 Alliance."  Woodlock Decl. Exh. A, FPPC Advice Letter to Fred
   Huebscher, May 1, 1998.  Under § 84305.5, the disclaimer would have

19 read in pertinent part:
       THIS DOCUMENT WAS PREPARED BY California Democratic Alliance,

20             NOT AN OFFICIAL PARTY ORGANIZATION.

21     The FPPC informed Huebscher that this proposed slate mailer
   triggered the disclaimer provisions of Section (a)(6) because it

22 would contain "indicia" of a political party due to the name,
   "California Democratic Alliance" in the disclaimer.

23

24 [9]  The defendants assert that the legitimate governmental
   purpose supporting the contested statutes is to eradicate

   fraudulent endorsements leading to confusion among the voters as

25 to the position of the official parties.  The slate mailers
   submitted were, inter alia, in support of, and asserted examples

26 of, the need for such regulation.

1  to an enforcement action against one of the plaintiffs.  After

2  the March 2000 primary election, plaintiff Kaptain was contacted

3  by the FPPC and informed that the FPPC wanted further

4  information from him regarding his slate mailer in connection

5  with an inquiry into whether he had violated Cal. Gov't Code

6  § 84305.5(a)(6).[10]  The investigation by the FPPC concerned the

7  lack of an (a)(6) disclaimer in Kaptain's slate mailer, which

8  contained references to the Democratic Party, after he endorsed

9  a candidate who was different than the candidate endorsed by the

10 Democratic party.  While it appears that no probable cause or

11 violation proceedings have been noticed against Kaptain or the

12 other plaintiffs, "<u>Abbot Laboratories</u> does not require Damocles'

13 sword to fall before we recognize the 'realistic danger of

14 sustaining a direct injury' that is the heart of the

15 constitutional component of ripeness." <u>City of Auburn v. Qwest</u>

16 <u>Corp.</u>, 260 F.3d 1160, 1172 (9th Cir. 2001).  Rather, where

17 plaintiffs face a dilemma in which they must choose between

18 complying with burdensome restrictions or risk a credible threat

19 of enforcement, the constitutional component of ripeness is

20 satisfied.  <u>See</u> <u>id.</u>  Indeed, in the First Amendment context,

21 where the burdensome restrictions carry with them the danger of

22

23      [10]  Although, as discussed at note 10, <u>infra</u>, the continuing
        viability of subsection (a)(6) is in question, for purposes of
24      justiciability it is sufficient that the FPPC continues to view it
        as enforceable.  Further, although the FPPC action arose in the
25      context of subsection (a)(6) only, it is equally significant when
        considering the threat of enforcement of § 84305.6, as that
26      provision is identical in every pertinent way to (a)(6).

1 self-censorship, it is especially appropriate to find that the
2 matter is ripe.  See <u>Virginia v. American Booksellers Ass'n,</u>
3 <u>Inc.</u>, 484 U.S. 383, 393 (1988)("[T]he alleged danger of this
4 statute is, in large measure, one of self-censorship; a harm
5 that can be realized even without an actual prosecution.").

6      Finally, I note that the prudential ripeness considerations
7 set forth in <u>Abbot Laboratories v. Gardner</u>, 387 U.S. 136 (1967)
8 are also satisfied here.  As is evident from the discussion
9 below, a judicial decision may be made on an essentially legal
10 basis.  See <u>id.</u> at 149.  Likewise, as required for a preliminary
11 injunction to issue, I explain below that the balance of the
12 hardships falls upon the plaintiffs.  See <u>id.</u> at 153.

13 **C.  LIKELIHOOD OF SUCCESS ON THE MERITS**

14      As an initial matter, I note that whether Cal. Gov't Code §
15 84305.5(a)(6) is currently in force is at issue in this
16 litigation.[11]  While this court must ultimately determine the

17

18 [11] It may be that subsection (a)(6) was revived by virtue of
the fact that the amendment to § 84305.5 was found unconstitutional
19 by this court. Generally speaking, it appears that under state law,
statutory provisions are not affected by a subsequent
unconstitutional law.  See <u>Lewis v. Dunne</u>, 134 Cal. 291, 299
20 (1901)(declaring an act unconstitutional, the California Supreme
Court further explained that it was "void for all purposes, and is
21 inoperative to change or in any way affect the law of the state as
it stood immediately before the approval of said act"); see <u>also</u>
22 <u>Sapiro v. Frisbie</u>, 93 Cal. App. 299, 312 (1928)(Ordinance stands
in original form, where purported amendment thereof is
23 unconstitutional).  On the other hand, Cal. Gov't Code § 84305.6,
which is nearly identical to, but more comprehensive than §
24 84305.5(a)(6), may have repealed subsection (a)(6) by implication.
See <u>Smith v. Matthews</u>, 155 Cal. 752, 758 (1909)(while an existing
25 statute is not ordinarily abrogated by the enactment of a new one,
it may be where the latter fully covers the whole subject matter
26 of the prior).

13

1  applicability of subsection (a)(6), the question need not be
2  resolved for purposes of this motion.  Rather, even if I were to
3  find that subsection(a)(6) remains in force, plaintiffs would
4  nonetheless be likely to succeed because § 84305.5(a)(6) suffers
5  from the same constitutional defect that is present in §
6  84305.6, which I now address.

7      Section 84305.6 requires slate mail organizations, whose
8  mailers "appear by representation or indicia to represent" a
9  political party, to disclose such party's opposing view each
10 time the recommendation on the mailer differs from that of the
11 party.  For example, if a Democrat-oriented slate mailer,
12 falling within the purview of § 84305.6, favors Proposition X
13 while the Democratic Party's Central Committee does not, the
14 mailer must disclose that "this is not the official position of
15 the Democratic Party," essentially advertising the party's
16 negative position on Proposition X.  Put directly, the statute
17 does not merely require a disclaimer, rather it requires the
18 mailer to articulate the position of the official party.  As I
19 now explain, however, such a requirement cannot pass
20 constitutional muster.

21      It is well-established that a statute compelling speech,
22 like a statute forbidding speech, falls within the purview of
23 the First Amendment.  See Wooley v. Maynard, 430 U.S. 705, 714
24 (1977)("The right to speak and the right to refrain from
25 speaking are complementary components of the broader concept of
26 'individual freedom of mind'").  The question here is whether

14

the slate mail, by virtue of its status as paid political
advertisements, or because of their potential to confuse or
mislead the electorate, may nonetheless be constitutionally
subject to § 84305.6's requirement of compelled speech.
Defendant argues that because the slate mail publishers are
paid, and because the object is to prevent confusion, § 84305.6
warrants only limited scrutiny or, in the alternative,
withstands strict scrutiny.  I consider these contentions in
turn.

First, assuming arguendo, that slate mailers are commercial
speech,[12] or that § 84305.6 applies only to fraudulent mailers,
it does not follow that a standard other than strict scrutiny
applies.  Rather, regardless of what type of speech or conduct[13]
triggers the requirements of § 84305.6, there is no question
that, once triggered, § 84305.6 compels specific speech with a
political message contrary to that propounded by the slate
mailer.  Thus, § 84305.6 is a content-based regulation
"operat[ing] as a command in the same sense as the statute or
regulation forbidding [a person] to publish specified matter."

---

[12]   But see N.Y. Times v. Sullivan, 376 U.S. 254, 265
(1964)("That the Times was paid for publishing the advertisement
is as immaterial [as to whether the First Amendment applies] as is
the fact that newspapers and books are sold.").

[13]   It is established that fraudulent speech is treated as
conduct and thus its regulation is ordinarily not subject to First
Amendment review at all. See, e.g., McIntyre v. Ohio Elections
Comm'n, 514 U.S. 334, 357 (1995)(distinguishing the permissible
punishment of fraud from "indiscriminately outlawing a category of
speech"); see also Gervetz v. Robert Welch, Inc., 418 U.S. 323, 340
(1974)("there is no constitutional value in false statements").

1  <u>Miami Herald Pub. Co. v. Tornillo</u>, 418 U.S. 241, 256

2  (1974)(holding unconstitutional a statute that required a

3  newspaper to publish a rebuttal after it assailed the character

4  of a political candidate).  "Mandating speech that a speaker

5  would not otherwise make necessarily alters the content of the

6  speech.  We therefore consider the [disclosure requirement] as a

7  content-based regulation of speech."  <u>Riley v. Nat'l Federation</u>

8  <u>of the Blind</u>, 487 U.S. 781, 795 (1988).  Put directly, it is not

9  the trigger but the consequence, the compelled speech, which

10  requires that § 84305.6 be subject to strict scrutiny.

11      Defendant argues that California has a compelling interest

12  in protecting voters from confusion and fraud.  <u>See</u>, <u>e.g.</u>,

13  <u>Burson v. Freeman</u>, 504 U.S. 191 (1992) (upholding prohibition on

14  electioneering within 100 feet of the entrance to a polling

15  place).  As the plaintiffs point out, however, § 84305.6 is

16  likely overbroad for this purpose.  While fraud is a proper

17  concern, it is far from clear what is meant by the phrase

18  "appear by representation or indicia to represent" a political

19  party.  Assuming, however, that a narrowing construction could

20  be imposed on this language, such a construction, as noted

21  above, would only limit the type of speech or conduct that

22  triggered the requirements of § 84305.6.  The question remains

23  whether the disclosure requirement of § 84305.6 is the "least

24  restrictive means to further the articulated interest."[14]  <u>Sable</u>

25  ───────────

26      [14]  Because a narrowing construction would not be dispositive
   in this case, <u>Pullman</u> abstention is not warranted.  <u>See</u> <u>Cedar Shake</u>

1 | Communications of Cal., Inc. v. FCC, 492 U.S. 115, 126 (1989).
2 | Clearly, it is not.

3 |     Present California law provides a less restrictive means
4 | for preventing a fraud on the electorate.  See California
5 | Elections Code §§ 20006, 20007 (prohibiting false claims that a
6 | candidate has been endorsed by a party central committee, and
7 | permitting any member of the party central committee or any
8 | registered voter to bring an action in Superior Court to enjoin
9 | any such misrepresentation).  Moreover, even if it were
10 | established that a compelled disclosure statement were indeed
11 | the least restrictive means to further the State's interest in
12 | protecting voters from confusion and fraud, the disclosure
13 | compelled by § 84305.6 goes beyond neutralizing the fraudulent
14 | or misleading aspect of the slate mailer.  Cf. former Cal. Gov't
15 | Code § 84305.5(a)(2)(before amendment by Proposition
16 | 208)(requiring a disclosure that the mailer is not an official
17 | party publication and does not necessarily represent the views
18 | of a party).[15]  Rather, § 84305.6 essentially forces slate mail

and Shingle Bureau v. City of Los Angeles, 992 F.2d 620, 622 (9th
Cir. 1993)(citing Railroad Commission of Texas v. Pullman Co., 312
U.S. 496 (1941)(abstention warranted only where "a definitive
ruling on the state issues by a state court could obviate the need
for constitutional adjudication by the federal court").

[15] Defendants argue that a disclosure such as that required
by former Cal. Gov't Code § 84305.5(a)(2) cannot adequately protect
voters from truly egregious mailers.  That which is freely
asserted, however, can be freely denied.  Notably, defendant had
no actual examples of such egregious mailers, and had to doctor one
of the plaintiffs' mailers to show the court why the provisions at
issue could be necessary.  This hypothetical mailer states in large
letters "Official Democratic Party Guide" on the front of the

17

1  publishers to give space to the opposing view.  Cf. Miami Herald
2  Publ. Co., supra.  Because § 84305.6 does not appear to be the
3  least restrictive means available to protect voters from
4  confusion and fraud, it is highly likely that the plaintiffs in
5  this case will prevail on the merits.

6  **D.   IRREPARABLE HARM AND BALANCING THE EQUITIES**

7  Plaintiffs have shown a high likelihood that the provisions
8  at issue will violate rights guaranteed them by the First
9  Amendment.  "The loss of First Amendment freedoms, for even
10  minimal periods of time, unquestionably constitutes irreparable
11  injury."  Elrod v. Burns, 427 U.S. 347, 373 (1976).  It is
12  further clear that, at this juncture, plaintiffs' injury is
13  imminent.  See Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1044
14  (9th Cir. 1999)("the ripeness requirement serves the same
15  function in limiting declaratory relief as the imminent-harm
16  requirement serves in limiting injunctive relief").  With the
17  November 2002 elections on the immediate horizon, absent an
18  injunction, plaintiffs will have to choose between self-
19  censorship or the real possibility of an enforcement action by
20  the FPPC.  This harm outweighs any that would be suffered by

21  _____

22  mailer, with a § 84305.5(a)(2) disclosure on the back stating that
   the mailer is not an official party publication.  While it may be
23  that the neutral disclosure of former § 84305.5(a)(2) would be
   insufficient to allay the confusion caused by the hypothetical
24  mailer's blatantly untrue statement, it is not clear that the
   § 84305.6 disclosure would do so either.  Moreover, as noted above,
25  California Elections Code §§ 20006 and 20007 provide one example
   of a less restrictive means of addressing this kind of fraud on the
26  electorate.

1  defendant or the public by the issuance of a preliminary

2  injunction.  Although defendant's interest and the public

3  interest in preventing fraud and voter confusion is legitimate,

4  these concerns are mitigated by the disclosure provision that

5  plaintiffs presently place on slate mailers, in combination with

6  the enforcement options provided by California Elections Code

7  §§ 20006, 20007.  Furthermore, it is  "in the public interest to

8  terminate the unconstitutional application" of a statute.

9  Zeller v. The Florida Bar, 909 F. Supp. 1518 (N.D. Fla. 1995).

10  **E.    BOND**

11       No preliminary injunction shall issue "except upon the

12  giving of security by the applicant, in such sum as the court

13  deems proper, for the payment of such costs and damages as may

14  be incurred or suffered by any party who is found to have been

15  wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

16  Under the Rule, it is "well settled that Rule 65(c) gives the

17  court wide discretion in the matter of setting security."

18  Natural Resources Defense Counsel v. Morton, 337 F. Supp. 167,

19  168 (D.D.C. 1971)(motion for summary reversal dismissed), 458

20  F.2d 827 (D.C. Cir. 1972).  See also  Urbain v. Knapp Bros. Mfg.

21  Co., 217 F.2d 810, 815-16 (6th Cir. 1954); Doyne v. Saettele,

22  112 F.2d 155, 162 (8th Cir. 1940).  In considering the

23  appropriate amount of the bond, I note on the one hand that the

24  only likely expenses which the bond stands for are the costs of

25  suit, on the other hand, I note that plaintiffs are business

26  people with some means at their disposal.  Accordingly, bond is

1  set in the amount of one thousand dollars ($1,000).

2                              **IV.**

3                           **CONCLUSION**

4      Based on the foregoing considerations, the court hereby

5  makes the following orders:

6      1.   Except as to the California Republican Assembly,

7  plaintiffs' motion for a preliminary injunction is GRANTED.

8      2. Defendant is preliminarily ENJOINED from enforcing

9  former Cal. Gov't Code section 84305.5(a)(6) and Cal. Gov't Code

10  section 84305.6. against said plaintiffs.

11      3.   Plaintiffs shall POST BOND in the amount of one

12  thousand dollars ($1,000) within ten (10) days.

13      IT IS SO ORDERED.

14      DATED:   September 20, 2002.

15

16                           _____
                            LAWRENCE K. KARLTON
17                           SENIOR JUDGE
                            UNITED STATES DISTRICT COURT

18

19

20

21

22

23

24

25

26

United States District Court
for the
Eastern District of California
September 20, 2002


* * CERTIFICATE OF SERVICE * *


2:02-cv-00199


Levine

    v.

Fair Political

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  September 20, 2002, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


        James V Lacy                   SJ/LKK
        James V Lacy Attorney at Law
        Civic Center Plaza            CFS
        30011 Ivy Glenn Drive
        Suite 223
        Laguna Niguel, CA   92677

        Lawrence Thomas Woodlock
        Fair Political Practices Commission
        428 J Street
        Suite 800
        Sacramento, CA   95814

        Geoffrey Lloyd Graybill
        Attorney General's Office
        PO Box 944255
        1300 I Street
        Suite 125
        Sacramento, CA   94244-2550

                        Jack L. Wagner, Clerk